Santiago v City of New York (2022 NY Slip Op 03538)





Santiago v City of New York


2022 NY Slip Op 03538


Decided on June 1, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 1, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
SHERI S. ROMAN
LARA J. GENOVESI
WILLIAM G. FORD, JJ.


2019-12318
 (Index No. 504622/16)

[*1]Maria Santiago, appellant, 
v
City of New York, et al., respondents, et al, defendant.


Law Offices of Ira M. Perlman, P.C. and Robert D. Rosen, P.C. (Pollack, Pollack, Isaac & DeCicco, LLP, New York, NY [Brian J. Isaac and Christopher J. Soverow], of counsel), for appellant.
Kaufman Dolowich Voluck LLP, New York, NY (Kevin J. O'Donnell of counsel), for respondents.



DECISION & ORDER
In an action to recover damages for personal injuries, the plaintiff appeals from an order of the Supreme Court, Kings County (Debra Silber, J.), dated September 24, 2019. The order, insofar as appealed from, granted those branches of the defendants' motion which were for summary judgment dismissing the complaint insofar as asserted against the defendants City of New York and New York City Human Resources Administration.
ORDERED that the order is affirmed insofar as appealed from, with costs.
In May 2015, the plaintiff, while walking in a second floor hallway in the Bedford-Stuyvesant Multi-Center located in Brooklyn, allegedly sustained injuries when she slipped and fell on a liquid substance on the floor of the hallway. The plaintiff was employed by nonparty CAMBA, Inc. (hereinafter CAMBA), a not-for-profit organization that provides services to underserved populations, as a program manager for its New Beginnings Program. The Bedford-Stuyvesant Multi-Center was divided into two sides. One side of the building (which is not at issue on this appeal) was occupied by the defendant New York City Department of Education (hereinafter the DOE) for the purposes of operating a public school. The other side of the building housed offices for not-for-profit social service agencies, including certain CAMBA programs such as the New Beginnings Program.
At the time of the accident, the defendant City of New York, through its agency, the defendant New York City Human Resources Administration (hereinafter HRA), owned the Bedford-Stuyvesant Multi-Center, having purchased it in 1983. Prior to the date of the accident, HRA had entered into an agreement, referred to as a "Sponsorship Agreement," with CAMBA. The Sponsorship Agreement provided that "[t]his is an agreement for services and does not convey any interest in real property to" CAMBA, and further provided that CAMBA's primary responsibilities "include the coordination of comprehensive services, and a full range of administrative functions geared to insure smooth day to day functioning of the [Bedford-Stuyvesant Multi-Center]." Pursuant to the Sponsorship Agreement, CAMBA was tasked with entering into occupancy agreements with service agencies, which occupied the offices in the portion of the building overseen by CAMBA. [*2]The Sponsorship Agreement specifically required that CAMBA "shall provide all custodial services, building maintenance and security for the [Bedford-Stuyvesant Multi-Center]," and "will at all times keep the [Bedford-Stuyvesant Multi-Center] in good and safe condition and repair."
The plaintiff commenced this action against the defendants alleging, inter alia, that they were negligent in maintaining the hallway at issue. After discovery, the defendants moved for summary judgment dismissing the complaint. In an order dated September 24, 2019, the Supreme Court granted the motion. The plaintiff appeals from so much of the order as granted those branches of the motion which were for summary judgment dismissing the complaint insofar as asserted against the City and HRA.
Generally, a landowner owes a duty of care to maintain his or her property in a reasonably safe condition (see Gronski v County of Monroe, 18 NY3d 374, 379; Basso v Miller, 40 NY2d 233, 241). "That duty is premised on the landowner's exercise of control over the property, as the person in possession and control of [the] property is best able to identify and prevent any harm to others" (Gronski v County of Monroe, 18 NY3d at 379 [internal quotation marks omitted]). Indeed, "[i]t has been held uniformly that control is the test which measures generally the responsibility in tort of the owner of real property" (Ritto v Goldberg, 27 NY2d 887, 889).
Here, the Sponsorship Agreement, which expressly states that "[t]his is an agreement for services and does not convey any interest in real property to" CAMBA, does not convey a leasehold interest to CAMBA. As a result, the City, as the landowner, and HRA as the agent of the City, "remain[ ] in presumptive control over [the] property and subject to the attendant obligations of ownership until it is found that control was relinquished, either as a matter of law or by a factfinder after presentation of all of the evidence" (Gronski v County of Monroe, 18 NY3d at 382). In assessing an out-of-possession landowner's duty in tort, the court should look not only to the terms of the agreement but also to the parties' course of conduct (see id. at 380-381).
The Sponsorship Agreement expressly requires that CAMBA "shall provide all custodial services, building maintenance and security for the [Bedford-Stuyvesant Multi-Center]," and "will at all times keep the [Bedford-Stuyvesant Multi-Center] in good and safe condition and repair" (emphasis added). Moreover, it is undisputed that the City and HRA never had offices at the Bedford-Stuyvesant Multi-Center, and neither the City nor HRA provided any guidance or direction, or exerted any control over CAMBA's daily maintenance of the facility, including floor cleaning. Further, although a space analyst employed by HRA conducted biannual inspections of the building, those inspections specifically concerned issues such as physical defects in the building, and the condition of the building's boiler and HVAC system.
Based upon the foregoing, the City and HRA established, prima facie, that they relinquished control of the premises to CAMBA such that they owed no duty to the plaintiff to remedy the allegedly defective condition of a liquid substance on the floor of a hallway (see Aponte v Lee, 191 AD3d 626; Sawicka v Schwimmer, 187 AD3d 957, 958; Whittington v Champlain Ctr. N. LLC, 123 AD3d 1253, 1254; cf. D'Angelo v City of New York, 179 AD3d 1015, 1017; Agbosasa v City of New York, 168 AD3d 794, 796). In opposition, the plaintiff failed to raise a triable issue of fact.
Accordingly, the Supreme Court properly granted those branches of the defendants' motion which were for summary judgment dismissing the complaint insofar as asserted against the City and HRA.
IANNACCI, J.P., ROMAN, GENOVESI and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court